IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**

          **Plaintiff,**

**JOHN McCARTY (10),**

          **Defendant.**

Case No. 14-cr-40129-10-DDC

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant John McCarty's Motion to Suppress Evidence (Doc. 203). McCarty asks the Court to suppress all evidence, including a .40 caliber handgun, found during a search of the vehicle he was driving when arrested because, he contends, the arresting officer's decision to impound the vehicle violated his Fourth Amendment rights. The government has filed a response to McCarty's motion (Doc. 208) and, in turn, McCarty has filed a Reply (Doc. 252). The Court conducted an evidentiary hearing on McCarty's motion on December 28, 2015. Having reviewed the arguments presented by the parties, the Court grants McCarty's motion for the reasons explained below.

I.     **Background**

The government has charged McCarty with conspiring to possess methamphetamine with intent to distribute it, using a communication device to facilitate that conspiracy, and possessing a firearm though he was prohibited from doing so. *See* Doc. 139 (Fourth Superseding Indictment). McCarty's motion seeks to suppress evidence as it pertains to the firearm charge against him.

On July 28, 2014, Officer Riggin of the Topeka, Kansas Police Department was on patrol in a marked car near downtown Topeka. Driving east on Southwest 7th Street, Officer Riggin

noticed a white Pontiac Bonneville leaving an alley behind an apartment that was known, he testified, as a location involving illegal drug activity. Officer Riggin watched as the driver appeared to stop in the alley and wait for the patrol car to pass. His suspicion aroused, Officer Riggin drove past the alley, turned around, and followed the Pontiac as it drove east on Southwest 7th Street and then turned north on Southwest Taylor. Officer Riggin continued to follow the Pontiac through downtown Topeka. After seeing the driver fail to use a turn signal, Officer Riggin activated his emergency lights and conducted a traffic stop. The Pontiac entered a parking lot located near the Kansas State Capitol and Kansas Supreme Court. The State of Kansas owns and controls the lot and, according to posted signs, allows people to park there "by permit only." Doc. 208-1.

Officer Riggin ran the Pontiac's license plate and determined that Wilbur McCarty had registered the vehicle.[1] Officer Riggin then approached the Pontiac and asked the driver, later identified as defendant John McCarty, for his license and insurance. In response, McCarty began looking through receipts and other papers that he pulled from the glove compartment. Perceiving this as a stalling tactic, Officer Riggin asked McCarty if his license was suspended. McCarty confirmed that it was. Officer Riggin then asked McCarty to get out of the vehicle. McCarty complied, shutting the Pontiac's door as he exited. Officer Riggin handcuffed McCarty, placed him under arrest for driving with a suspended license, and placed McCarty in the back seat of his patrol car. A pat-down search of McCarty's pockets uncovered $2,204 in cash, folded together in $100 increments. After Officer Riggin had placed McCarty in the back seat of his patrol car, he asked him for consent to search the Pontiac. McCarty refused.

---

[1] The government's Response asserted that Daniel S. McCarty was the registered owner. *See* Doc. 208 at 3. At the evidentiary hearing on this motion, however, Officer Riggin testified that Wilbur McCarty owned the vehicle.

2

At some point during this process, members of the Kansas Capitol Police arrived. They advised Officer Riggin that the State parking lot required a permit, the Pontiac did not have one, and thus it could not stay there. So, Officer Riggin called a tow truck to seize the vehicle and transport it to the Police impound lot. After Officer Riggin called for a tow, Sargent Gardner, a K9 officer with the Topeka Police Department, led his dog around the Pontiac so the dog could conduct a free air sniff. The dog did not alert to the presence of drugs or other contraband in the vehicle. Officer Riggin then reapproached the Pontiac and opened its driver-side door to conduct an inventory search so the car could be towed. This, Officer Riggin testified, complied with Topeka Police Department Policy. *See* Government Hearing Exhibit 4 ("General Order" No. O05). Officer Riggin discovered a .40 caliber handgun partially concealed under the floor mat. Later, the inventory search also discovered an additional magazine for the gun located in the trunk.

## II.     Analysis

McCarty contends that the Fourth Amendment requires the Court to suppress all evidence discovered during the search of the Pontiac. Specifically, McCarty asserts that law enforcement's decision to impound the vehicle (and the resulting inventory search) was illegal because a standardized policy and a valid community-caretaking rationale did not support it. In response, the government contends that Court should deny McCarty's motion for three reasons. First, the government asserts that McCarty lacks standing to challenge the impoundment and search of the vehicle. Second, the government contends that impounding the Pontiac was legal because it served a community-caretaking function and Officer Riggin followed a standardized procedure while performing his inventory search. Third, the government contends that Officer

Riggin's search of the Pontiac was a valid search incident to arrest.  The Court addresses each of the government's arguments, in turn, below.

### a. McCarty has standing to challenge the impoundment and search under the Fourth Amendment.

The government contends that McCarty cannot challenge law enforcement's decision to impound and search the Pontiac because McCarty did not have a Fourth Amendment right to privacy in the vehicle.  Generally, whether a defendant's "Fourth Amendment rights were violated by a challenged search turns on the classic Fourth Amendment test:  'whether the defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as objectively reasonable.'"  *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000) (quoting *United States v. Erwin*, 875 F.2d 268, 270 (10th Cir. 1989)).  In the context of an automobile search, the Tenth Circuit has held that a defendant has a reasonable expectation of privacy in a vehicle if he establishes "a 'legitimate possessory interest in or [a] lawful control over the car.'"  *Id*. (quoting *United States v. Gama-Bastidas*, 142 F.3d 1233, 1239 (10th Cir. 1998)) (brackets in original).  "'[A] defendant need not submit legal documentation showing a chain of lawful custody from the registered owner to himself.'"  *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009) (quoting *United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003)).  But a defendant "has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search."  *Id*. at 1274 (quoting *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000)).  Thus, where a defendant challenges the search of a vehicle for which he is not the registered owner, he "bears the burden of establishing 'that he gained possession from the owner or someone with authority to grant possession.'"  *Id*. (quoting *Hocker*, 333 F.3d at 1209).

Here, McCarty has attached an affidavit from his father, Wilbur McCarty, to his Reply. *See* Doc. 252-1. In it, Wilbur McCarty declares: "John McCarty was in full legal possession of the white 2000 Pontiac Bonneville seized on July 28th, 2014, Kansas license plate number 506 CVA." *Id*. McCarty's father goes on to state that "[a]lthough the title [of the Pontiac] was in my name, I gave full permission to John McCarty to use this vehicle for personal use." *Id*.

Based on the sworn statements made by Wilbur McCarty's affidavit, the Court concludes that the defendant had lawful control of the Pontiac at the time of his arrest and thus he has standing to challenge the impoundment and search of the vehicle. *See Eckhart*, 569 F.3d at 1263. The undisputed evidence precludes the government's argument to the contrary.

### b. The government has failed to establish that impoundment complied with the Fourth Amendment.

Having established standing, McCarty moves to suppress all evidence seized from the Pontiac because, he contends, law enforcement's decision to impound the vehicle did not comport with the Fourth Amendment. To support this argument, McCarty cites *United States v. Sanders*, 796 F.3d 1241 (10th Cir. 2015). There, the Tenth Circuit held "that impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if [the impoundment is] justified by *both* a standardized policy *and* a reasonable, non-pretextual community-caretaking rationale." *Id*. at 1248 (emphasis added). McCarty contends that neither justification exists here.

"The Fourth Amendment protects individuals and their property from unreasonable searches and seizures by the government." *United States v. Ibarra*, 955 F.2d 1405, 1408 (10th Cir. 1992) (citing *United States v. Place*, 462 U.S. 696, 700 (1983)). And where a defendant challenges law enforcement's decision to impound a vehicle, "[t]he government bears the burden

of proving that its impoundment . . . satisfies the Fourth Amendment." *Sanders*, 796 F.3d at 1244 (citing *Ibarra*, 955 F.2d at 1409).

The government has failed to adduce any evidence showing that law enforcement followed a standardized policy when it decided to impound the Pontiac. Instead, it asserts only that Officer Riggin's decided to impound the vehicle "in reasonable reliance upon the Capitol Police['s] advi[c]e." Doc. 208 at 11. This assertion is insufficient to satisfy the burden that *Sanders* imposes on the government. *See* 796 F.3d at 1248. For one, the government has not carried it burden to establish that the impoundment complied with a Topeka Police Department policy. Nor has the government shown that the Capitol Police's request complied with its own policies. Indeed, McCarty has offered evidence that it did not. Specifically, McCarty directs the Court to K.A.R. § 1-45-24, the Kansas Administrative Regulation governing parking in any "lot or garage for which parking permits are issued" on state-owned and operated property in Shawnee County, Kansas, where Topeka is located. This regulation calls for escalating administrative fines during the first three days that a vehicle violates a lot's permit requirement. *See* K.A.R. § 1-45-24(a)(1)(A)-(C). Only after three days is a vehicle subject to towing. *See* K.A.R. § 1-45-24(a)(1)(D). Because it has failed to present any evidence demonstrating that law enforcement based its decision to impound on a standardized policy, the government has failed to establish that the Pontiac's impoundment complied with the Fourth Amendment. *See Sanders*, 796 F.3d at 1248.

### c. Officer Riggin's search was not a valid search incident to arrest.

Alternatively, the government attempts to justify its search of the Pontiac as a search incident to McCarty's arrest. The search incident to arrest exception to the Fourth Amendment warrant requirement serves two purposes: "to discover hidden weapons and to prevent the

6

suspect from destroying evidence." *United States v. Edwards*, 632 F.3d 633, 643 (10th Cir. 2001) (citing *Chimel v. California*, 395 U.S. 752, 762 (1969)).  Consistent with this dual purpose, a search incident to arrest "may only include 'the arrestee's person and the area within his immediate control . . . mean[ing] the area from within which he might gain possession of a weapon or destructible evidence.'" *Arizona v. Gant*, 556 U.S. 332, 339 (2009) (citing *Chimel*, 395 U.S. at 763).  Law enforcement thus may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," *id*. at 343, or when "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id*. at 347.  "In many cases, such as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." *Id*. at 343.

      Here, Officer Riggin arrested McCarty for driving with a suspended license.  He thus lacked any legitimate reason to suspect that the Pontiac contained any offense-related evidence justifying a search incident to arrest. *See id*.  In addition, there is no evidence that a concern for officer safety existed once McCarty stepped out of the Pontiac, was cuffed, and was placed in Officer Riggin's patrol car.  Indeed, the record shows that McCarty had shut the door of the Pontiac before Officer Riggin placed him in handcuffs.  And, after searching McCarty's pockets, Officer Riggin secured him in the backseat of a police car.  At that point, the passenger compartment of the Pontiac (including the concealed handgun) was outside of McCarty's reach and control.  Thus, neither of this exception's dual purposes can validate law enforcement's warrantless vehicle search of the Pontiac. *See id. at* 339 ("If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply.").  The Court

thus concludes that the government has failed to establish that the search of the Pontiac was a valid search incident to arrest.

### d. The plain view doctrine does not save the government.

While the government never argues it, the testimony at the evidentiary hearing raised the question whether the plain view doctrine might apply. The doctrine permits law enforcement to seize evidence of a crime without a warrant if:

> (1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent-i.e. the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.

*United States v. Soussi*, 29 F.3d 565, 570 (10th Cir. 1994) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)). But the evidence here explains why the government does not invoke this doctrine.

Officer Riggin testified that he first saw the partially concealed firearm on the floor of the Pontiac after he had opened the driver's door to begin his inventory. To his credit, Officer Riggin did not claim that he viewed the gun by looking down through the driver's open window. One might view the government's Hearing Exhibit 2 to suggest it was possible to see the gun from outside the car. But a close examination of this photograph shows that at least part of the camera that took this picture was inside the Pontiac.

### III. Conclusion

The government has failed to meet its burden to establish that its warrantless search of the vehicle McCarty was driving at the time of his arrest is valid under an exception to the Fourth Amendment warrant requirement. The Court thus grants McCarty's Motion to Suppress and orders all evidence seized from the vehicle, including a .40 caliber handgun, suppressed as fruit of an illegal search.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant John McCarty's Motion to Suppress Evidence (Doc. 203) is granted.

**IT IS SO ORDERED.**

**Dated this 29th day of December, 2015, at Topeka, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
